CHARLES BARCLAY, admr. &c.,

v.

SAMUEL C. COOPER.

1. One of three executors managed the affairs of the estate, under an agreement with all the beneficiaries that he should charge no commissions for his services; should account and settle with them once a year, and should not be required to pay interest on the balances in his hands, and should receive none on balances in his favor, and this arrangement was acquiesced in by the administrator of one of the beneficiaries after her death, and the executor avowed his willingness, and was, in fact, willing and ready to account to him, as usual. —*Held*, that he cannot be charged with interest on the intestate's share.

2. After the beneficiary's death the executor, in order to save the expense of a foreclosure, took a conveyance of the premises, covered by a mortgage belonging to the estate.—*Held*, that he must account therefor, as personalty, to the administrator of such beneficiary—*aliter*, as to lands acquired under foreclosure, and brought in to protect the estate before such beneficiary's death.

Bill for an account &c. On final hearing upon pleadings and proofs.

*Mr. H. A. Drake*, for complainant.

*Mr. H. M. Cooper*, for defendant.

THE CHANCELLOR.

The complainant was the husband of Ellen C. Barclay, deceased, who was one of the daughters of Joseph W. Cooper, deceased, and he sues as her administrator. Her father died in 1871. By his will and the codicil thereto, after making provision for his widow (who is dead), he gave all the residue of his estate to his four children, Samuel C., Mary E., Ellen C. and Walter M. The executors were the widow and the two sons, Samuel and Walter. They all proved the will and codicil. Walter died in 1882, intestate, and without issue. Letters of administration upon his estate were issued to his brother Samuel,

Barclay v. Cooper.

the defendant. Ellen was married to the complainant in October, 1882. She died intestate about one year afterwards, leaving one child, who is still living. The estate of Joseph W. Cooper appears to have been managed by the defendant. Upon Walter's death each of the three surviving children was the owner of one-third of the property. Up to the death of Ellen, Samuel managed the estate in the interest of, and for all three, and without charge to his sisters for his services, under an arrangement that he should not charge for his services, should make annual settlements, and should pay no interest for balances in his favor. After Ellen's death he continued still to manage it in like manner, with (as he says) the consent of the complainant. The bill is filed for an account of Ellen's interest in the estate, for a discovery of her personal property held by the defendant, and to restrain him from expending that property in improvements upon the joint real estate. The parties made a settlement in January, 1884, and, in pursuance of it, the defendant paid the complainant about $33,000 for his deceased wife's interest in the assets of the estate of her father, except the property held jointly and her interest in Walter's share. There was a settlement of her interest in Walter's estate in July, 1884. In the fall of that year the complainant told the defendant that he would like to have the whole matter settled up, and the latter replied that it was his custom to settle the matters of the estate with the members of the family at the first of the year; that he had always done so. The complainant did not object to waiting until that time. On the 1st of January following, the defendant was ready to settle, but, on account of the complainant's illness, the settlement was deferred, and it took place on the 5th of March following. The defendant paid the complainant, upon that settlement, $11,179.09, the amount found due. At that time the defendant stated that he would be ready to settle again upon the first of the next year, and he says the complainant made no objection. On the 1st of January, 1886, the defendant was ready to settle with the complainant for all moneys received and paid out during the preceding year, and tendered himself ready to do so to the complainant's attorney, who refused to make the

settlement. The attorney indeed says that the defendant, after the bill had been filed (it was filed December 4th, 1885), told him that the settlement, which he desired to make upon the 1st of January, would be made only in case this suit should be withdrawn, or the matters in controversy in it settled, but he also says that on or about the 1st of January the defendant called at his office with his book (his account book) in his hand, and then stated to him that he was ready to settle, according to his custom, at the beginning of the year for the moneys which he had collected and paid out during the year. In October preceding, and before the bill was filed, the defendant stated to the attorney that he would settle on the 1st of January, as he had been accustomed to do ever since he had acted as trustee in the management of the estate.

The case shows no unwillingness on the part of the defendant to account to the complainant. If, as the former testifies, the latter made no objection to his proposition made on March 5th, 1885, to settle again upon the 1st of January succeeding, the filing of the bill was not necessary to get an account. On the 1st of January, 1886, the defendant offered to account. The complainant could have got all the information he desired in reference to the matters involved in the transactions of the defendant in the management of the estate by inquiring of the defendant. There is no evidence of any refusal whatever to give him any information for which he asked. The defendant swears that after the death of his sister, the complainant's wife, he explained to the complainant everything in regard to her personal estate and the securities belonging to it, and that when he handed to the complainant the bonds (held by her in severalty) in his possession belonging to her estate, he and the complainant went over the defendant's book, page by page, to see whether the endorsements upon the bonds corresponded with the defendant's book in which he kept a memorandum of all mortgages and of the time up to which interest was paid, and that the complainant saw all the mortgages which the defendant had belonging to the joint estate or to the complainant's wife. He also says that at one time he showed the complainant his plans of the real prop-

Barclay v. Cooper.

erty and his way of keeping books in reference to that property, and gave him such information upon the subject as would enable him, in case of the defendant's death or disability, to understand the whole matter. It may here be remarked that the complainant says that, in the settlement made in March, 1885, the defendant declined to pay over his (the complainant's) share of the principal of the joint mortgages that he had in his possession, on the ground that there were expenses of the joint real estate to be met and he had assumed to meet them. The defendant could not reasonably have been expected to pay over any of the principal of those mortgages to the complainant at that time. The mortgages belonged to the defendant, his sister, Mrs. Kaighn, and the estate of the complainant's deceased wife, and the principal had not been collected. The complainant's attorney says that the defendant said to him that he declined to make a settlement with the complainant as administrator relative to the personal property (referring to the joint mortgages) of the complainant (as administrator) in his possession, and that he intended to retain it in his possession for the purpose of meeting, out of the income thereof, the expenses for improvements and repairs upon the real estate in which the complainant and his child were interested. He says also that the defendant said that he ought to retain that personal property for the purpose stated, for his protection, or in justice to himself, or that he ought to be allowed to do so for his protection. But the defendant never in fact refused to account for the money and property in his hands. The complainant admits that when he solicited the defendant to become his surety upon his bond for $5,000 as administrator, he said to the latter that he considered the taking out of the letters a mere form, as there were no creditors and there was practically nothing for an administrator to do as such; that what there was to do could be done as well without letters of administration as with them, and that he expected that the affairs of his wife's estate would go on just as they had gone on theretofore. That is, that the defendant would continue to manage both real and personal property as he had done. The defendant testifies that the complainant told him so on more than one occasion,

and that he told him so as lately as the settlement in March, 1885.

Three questions are presented in reference to the account : one is whether the defendant should be required to pay interest upon the balance in his hands due the complainant; another is whether the land bought in under foreclosure proceedings by the defendant, in trust for himself and the others interested in joint mortgages which were foreclosed, and which purchases were necessary to protect the interests of the holders of those mortgages and which land remains unsold, is to be regarded as personal or real estate in the accounting with the complainant, which is, of course, to be of the personal estate only of his deceased wife. The other question is as to the liability of the deponent to account to the complainant in respect to a mortgage given by one Munn to the defendant and his brother and sisters, of a vacant city lot sold by them to him, in satisfaction of which mortgage a conveyance of the lot was taken by the defendant in trust for those interested in the mortgage.

As to the first question : The defendant undoubtedly understood from the complainant that the latter was desirous that the family arrangement before referred to should continue until a final settlement should be made, and he appears to have had good reason for such understanding. By that arrangement the defendant was not chargeable with interest upon the balance in his hands at the end of the year. The settlement of March, 1885, was made upon that basis. On the other hand, the defendant was entitled to no commissions or other compensation for his services. He tendered himself ready to settle on the 1st of January, 1886, in accordance with the arrangement. He therefore should pay no interest up to that date. Nor should he pay any interest for the period since then, for he swears that he has always been ready to pay the money to the complainant.

The discovery which was sought by the bill has been made, and the case shows no concealment nor any bad faith upon the part of the defendant. Nor is it shown, nor does it appear, that the defendant, when the bill was filed, contemplated expenditures out of the joint personal property in his hands for improve-

ments upon the joint real estate, except it may have been such as he would have made unwillingly and because constrained to make them by the municipal authorities.

The Munn property was conveyed to the defendant in March, 1884, after the death of the complainant's wife, and it appears to have been taken in order to save the expense of foreclosure proceedings. The action of the defendant in the matter seems to have been judicious, and it is not impeached. That land must be regarded as personal property, and therefore the complainant is entitled to an account in respect thereto and the defendant to allowance of any taxes, &c., paid by him thereon.

As to any land obtained through foreclosure proceedings or otherwise in satisfaction of mortgages thereon, before the death of the complainant's wife, it is to be regarded as real estate, for such it was at her death.

There must be an account, but the defendant should not be required to pay the costs of this suit.